UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                                                    DECISION AND ORDER
          v.                                                       06-CR-58A

DWIGHT LEEPER,

                 Defendant.

---

## **BACKGROUND**

On February 7, 2006, a grand jury empaneled on May 7, 2004 (the "May 2004 grand jury") returned a one-count indictment against the defendant, Dwight Leeper, charging him with bank robbery in violation of 18 US.C. § 2113(a).  The indictment read:

> On or about the sixth day of May 2004, in the Western District of New York, the defendant, DWIGHT LEEPER, did knowingly take from the person of another, money in the care, custody, control, management and possession of the Southern Chautauqua Federal Credit Union at 310 Fairmont Avenue, Jamestown, New York, the deposits of which were then insured by the Federal Deposit Insurance Corporation.

1

Trial was scheduled to commence on May 15, 2006. On May 5, 2006, a superseding indictment ("Superseding Indictment") was returned. The purpose of the Superseding Indictment was to correct a mistake in the original indictment, which charged that the credit union was insured by the Federal Deposit Insurance Corporation, when in fact it was really insured by the National Credit Union Administration.

On May 15, 2006, the parties appeared for trial as scheduled. A jury was selected, but not sworn. After the jury had been empaneled and excused for the day, the Court brought to the parties' attention the case of United States v. Olson, 262 F.3d 795 (8th Cir. 2001), and requested briefing on the issue. In Olson, the Eight Circuit had reversed a bank robbery conviction because the indictment had failed to allege all of the essential elements of the crime. Specifically, the indictment failed to allege that the defendant had used force, intimidation and violence during the robbery. As in Olson, Superseding Indictment against defendant Leeper (and the original indictment) failed to allege that he had used force, violence or intimidation during the course of the alleged bank robbery.

After reading the Olson case and apparently recognizing the defect, the government sought to remedy its error by again superseding

2

the indictment.  However, since the May 2004 grand jury had expired,[1] the government was unable to have the May 2004 grand jury supersede.  Instead, on Tuesday, May 16th, the day after jury selection, the government appeared before a *new* grand jury that had been empaneled on November 4, 2005 (the "November 2005 grand jury") and asked the November 2005 grand jury to supercede the Superseding Indictment.

On Wednesday, May 17th, the government advised the Court and counsel that a second superseding indictment ("Second Superseding Indictment") containing all of the required elements had been returned.  Upon questioning by the Court, it was revealed that the government had presented the matter to a new grand jury.  Given the expediency with which a new grand jury had been assembled, presented with evidence and returned the indictment, the Court had reservations as to whether the second grand jury had considered the matter anew, or whether it was just "rubber stamping" a change to an indictment issued by a prior grand jury.

The Court asked to see the transcripts of the May 16th grand jury proceeding, as well as the transcripts of the earlier grand jury

---

[1] The May 2004 grand jury expired on May 7, 2006, after having been extended for an additional six-month period.

proceedings. The transcripts were provided to the Court on Thursday, May 18, 2006. The Court then directed that copies be provided to defense counsel and that the parties provide briefing as to the propriety of the May 16th grand jury proceeding. After reading the transcripts, reviewing the briefs, and hearing argument from counsel, the Court finds that the indictment must be dismissed because it was issued in violation of the defendant's Fifth Amendment right to be indicted by an independent and unbiased grand jury, and because that violation prejudiced the defendant.

## DISCUSSION

**A.    *The Violation***

The Fifth Amendment of the United States Constitution provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . ." U.S. Constit. amend. V. The grand jury has been characterized as "a constitutional fixture in its own right" that operates independently of both the judiciary and the executive branch. See United States v. Williams, 504 U.S. 36, 47 (1992). Accordingly, to be valid, the Fifth Amendment requires that an indictment issue from an *independent* and *unbiased* grand jury. This

requirement has long been recognized.  See Costello v. United States, 350 U.S. 359 (1956); see also Stirone v. United States, 361 U.S. 212, 218-19 ("The right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment.").  If the Grand Jury Clause means anything,

> it means that a criminal indictment must actually issue from a grand jury, not some other source.  The fundamental concept underlying the Fifth Amendment guarantee is that in order for an indictment to be recognized as actually issuing from a grand jury, it must be the product of an investigative deliberation that is *independent* of both the prosecuting attorney and the court . . . .  Without a guarantee of independence, the indictment would not be the genuine issue of a grand jury within the meaning of the Constitution.

See United States v. Sigma Int'l, Inc., 244 F.3d 841, 856 (11th Cir. 2001), *rehearing en banc granted and opinion vacated by* 287 F.3d 1325 (11th Cir. 2002) (citations omitted)(emphasis in original).[2]  The Supreme Court reiterated this point in United States v. Williams, when it stated that "the Fifth Amendment's constitutional guarantee presupposes an investigative

---

[2] The Eleventh Circuit vacated its decision in Sigma Int'l upon granting a rehearing *en banc*.  The appeal was later dismissed as moot after the defendant pleaded guilty.  Nevertheless, the facts in Sigma Int'l resemble somewhat the unusual circumstances that occurred in this case and, as such, the Court found the Eleventh Circuit's analysis and reasoning to be helpful.

body acting independently of either prosecuting attorney or judge." Williams, 504 U.S. at 49 (emphasis and quotations omitted).

A review of the May 16th grand jury proceedings reveals that the right to an indictment by an independent and unbiased grand jury was violated in this case. Immediately after the grand jury was assembled on May 16th, the November 2005 grand jury was informed that an earlier grand jury had already indicted this defendant on one count of bank robbery and that their purpose here was to fix "a defect in the charging instrument." The grand jury was also told that the trial had already commenced, that a petit jury had already been impaneled, and that the original grand jury was not able to supersede the indictment itself because it had expired.[3]

The prosecutor then advised the May 16th grand jurors that they were going to hear summaries of testimony that the original grand jury had heard, and that the transcripts of that testimony would be available to them for review. The prosecutor also told the grand jurors that "the fact that some other grand jury heard this case should not play a part in your deliberation" and that they should make their "own determination."

---

[3] Although the prosecutor did not expressly say that the original grand jury had expired, that was clearly implied by his statement that "[i]t would be more convenient, of course, if you had been the [original] grand jury . . . ."

6

Nevertheless, that admonition was meaningless in the context of the proceeding.  Had the prosecutor really intended for the May 16th grand jury to reach its own independent determination without influence as to what another grand jury had done, there would have been no need to even mention the existence of an earlier indictment or the fact that the trial had started and that a petit jury had been empaneled.  Certainly, one purpose in doing so was to convey a sense of immediacy and to assuage any concerns that the May 16th grand jury might have as to whether there existed sufficient evidence to indict by assuring them that another grand jury had already done just that after hearing the same evidence.

It is also clear from the transcript that the grand jury was led to believe that its purpose that day was merely to correct a technical error that had occurred in an otherwise validly issued indictment.  In fact, one grand juror even asked whether the failure to include the missing element was merely an "oversight," to which the prosecutor responded *"yes, that is exactly right"*.  Another prosecutor told the jury they were just being asked simply to correct *"omissions in paperwork"* that occurred with the original indictment, and that there were no defects relating to the presentation of the evidence.

The failure to include an essential element in the charging instrument can hardly be considered a mere "oversight" or "omission in paperwork." A charge is not valid unless it includes all of the essential elements of the crime. The same defect occurred in Olson, and the Eighth Circuit found it so significant that it warranted the dismissal of the defendant's bank robbery conviction. See United States v. Olson, 262 F.3d 795 (8th Cir. 2001).

The prosecutors' characterization of the defect as a mere "oversight" or "omission in paperwork" inferred to the November 2005 grand jury that, but for the expiration of its term, the first grand jury would have voted to correct the "oversight" itself. That improper inference placed "significant pressure . . . upon the [second] grand jury to 'rubber stamp' the indictment out of deference to the [original] grand jury." See Sigma Int'l, 244 F.3d at 871.

The remainder of the proceeding further exacerbated these errors. It is evident from the transcript and the length of the proceeding (about an hour) that the prosecutor hurriedly ran though select portions of *some* of the testimony that had been considered by the original grand jury. Although he purported to be quoting from the original transcripts, he often

deviated from them, providing summaries instead of actual quotes.  In doing so, he became an unsworn witness before the grand jury.[4]  The jury was also misled into believing that it was being provided with *all* of the testimony that had been considered by the original grand jury, when in fact that was not the case.  Furthermore, the May 16th grand jury was never advised that it could hear from the witnesses themselves or request additional evidence.  It is the Court's understanding that the entire proceeding lasted only about one hour, and that the grand jury had the full transcripts[5] in their possession for consideration for only about 10 minutes before issuing the Second Superseding Indictment.

       The haste of the proceeding, the jury's knowledge that another grand jury had already indicted the defendant, the prosecutors' assurances that the error was merely an "oversight" or an "omission in paperwork," the implication that the original grand jury would have fixed the error itself had it not expired, the immediacy with which the May 16th grand jury was being

---

[4] On at least one occasion, the prosecutor's summary of testimony was inaccurate. The Court recognizes that the presentation of inaccurate summaries is not a sufficient basis for dismissing an indictment.  See Bank of Nova Scotia v. United States, 487 U.S. 250, 261 (1988).  Nevertheless, it is mentioned to show the extent to which the entire proceeding was flawed.

[5] The Court also finds it troubling that the transcripts provided to the May 16th grand jury were evidently highlighted *by the government*, purporting to identify those portions of the testimony that were relevant to their consideration.  This factor contributed to the undue influence placed upon the May 16th grand jury to return an immediate indictment.

asked to return the superseding indictment, and their knowledge that a petit jury had already been picked and the trial had started, all placed undue influence on the May 16th grand jury to return the Second Superseding Indictment without fully considering the matter.  In light of these factors, the Court finds that a clear violation of the Fifth Amendment occurred.

**B.     *The Remedy***

Having found that the Fifth Amendment was violated, the Court now turns to the issue of the appropriate remedy.  Federal courts have generally understood the authority to remedy grand jury errors flowing from two different sources:  (1) the court's supervisory authority over the grand jury process; and (2) the constitution itself.  See e.g. United States v. Larrazolo, 869 F.2d 1354, 1357-58 (9th Cir. 1989); United States v. McKenzie, 678 F.2d 629, 631 (5th Cir. 1982).  "Dismissal of an indictment is . . . warranted on constitutional grounds if prosecutorial misconduct has undermined the grand jury's ability to make an informed and objective evaluation of the evidence presented to it."  United States v. Sears, Roebuck & Co., 719 F.2d 1386, 1391 (9th Cir. 1983).  Dismissal of an indictment pursuant to the Court's supervisory authority is permitted only when the

errors before the grand jury violated a clearly established procedural rule, a statute or the constitution.  See Williams, 504 U.S. at 46 and n. 6 (1992). [6]  Whether derived from the constitution or from its supervisory authority, it is clear that this Court has authority to dismiss an indictment where it was issued in violation of the Fifth Amendment's guarantee of an unbiased and independent grand jury.

However, the Court may not dismiss an indictment unless it finds that the errors in grand jury proceeding actually prejudiced the defendant.  See Bank of Nova Scotia v. United States, 487 U.S. 250 (1988).  In determining whether prejudice has occurred, the inquiry is on whether the alleged violation had an effect on the grand jury's decision to indict.  Id., at 263.  In other words, the inquiry is focused on whether the alleged errors infringed upon the grand jury's "ability to exercise independent judgment." Id. at 259.  To find prejudice, the alleged violation must have "affected the charging decision." Id. at 259-60.

There can be no doubt that the irregularity of the May 16th

---

[6] In Williams, the Court held that a federal court's supervisory authority does not permit it to dismiss an indictment for failure to provide the grand jury with exculpatory evidence because federal courts cannot prescribe standards of prosecutorial conduct before grand juries in the first instance.  Rather, the supervisory authority may be exercised only where the errors violated a statute, constitutional guarantee, or an established rule of criminal procedure.

proceedings affected the grand jury's decision to issue the Second Superseding Indictment.  The May 16th grand jurors were most certainly predisposed to indict after hearing that a prior grand jury -- upon hearing the same evidence -- had found sufficient probable cause to indict.  Any lingering doubt as to whether probable cause existed was likely alleviated by the prosecutors' assurances that the requested change was merely an "oversight" or an "omission in paperwork," and by their inference (whether or not intended) that the original grand jury would have corrected the "oversight" if it had had the opportunity.  As it is clear that the improper information "substantially influenced the [May 16th] grand jury's decision to indict," Bank of Nova Scotia, 487 U.S. at 256, the Court finds that the defendant has suffered prejudice as a result of this constitutional violation.

  Nothing in this Decision and Order is meant to suggest that the Court believes the government attorneys were acting in bad faith.  On the contrary, in the Court's view, their hasty actions were simply a misguided attempt to salvage their fatally flawed indictment.  Nevertheless, in determining whether the defendant suffered prejudice, the inquiry "focuses not on the degree of culpability of the prosecutor, but on the impact of his misconduct on the grand jury's impartiality."  Sears, Roebuck, 719 F.2d at

1391.  To let the indictment stand under these circumstances would make a mockery out of the entire grand jury process and would render the Grand Jury Clause a nullity.  Accordingly, the Court finds that the indictment must be *dismissed without prejudice*.[7]

       IT IS SO ORDERED.

                             /s/ *Richard J. Arcara*
                             HONORABLE RICHARD J. ARCARA
                             CHIEF JUDGE
                             UNITED STATES DISTRICT COURT

DATED: May 22, 2006

---

[7] Although the defendant has requested that the indictment be dismissed *with prejudice*, the Court has found nothing in its research to support such a remedy.  Indeed, the law is clear that a prosecutor may seek indictment before different or successive grand juries.  See e.g, United States v. Contenti, 735 F.2d 628, 630 (1st Cir. 1984) (finding that no abuse of grand jury process occurred when the investigation was transferred to another grand jury after the first grand jury expired); United States v. Flomenhoft, 714 F.2d 708, 711-12 (7th Cir. 1983) (holding that an indictment returned by second jury was valid even though jurors chose not to hear live testimony, but relied on full transcripts from earlier grand jury proceeding**).**  This well-settled principle would permit the prosecution to seek re-indictment of the defendant before a new *unbiased and independent* grand jury (i.e. a grand jury who is *unaware* that another grand jury had voted favorably upon indictment).  Dismissal with prejudice is particularly inappropriate here because the Court believes the prosecutors did not intend to violate the defendant's Fifth Amendment rights -- it was simply the consequence of their actions.  Finally, where constitutional violations have been found, the remedy is to restore the defendant to the position he would have been in but for the alleged violation.  Dismissal of the indictment without prejudice accomplishes this result.

14